**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **STEPHANIE BUSH**, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 22-1292-KSM** |
| **LVNV FUNDING LLC,** | |
| Defendant. | |

**MEMORANDUM**

**MARSTON, J.**                                                     **October 31, 2022**

Plaintiff Stephanie Bush alleges that Defendant LVNV Funding, LLC violated the Fair

Debt Collections Practices Act ("FDCPA") when it reported to credit agencies that Bush owed a

debt without noting that the debt was disputed.  (*See generally* Doc. No. 1.)  On May 3, 2022,

LVNV made an offer of judgment, which Bush accepted on May 16, 2022.  (*See* Doc. No. 4 at

2.)  The offer stated that judgment would be entered against LVNV for $1,001 in statutory

damages and "an amount for [Bush's] reasonable attorney's fees and costs in connection with

[Bush's] prosecution of the claims alleged against LVNV through the date of [Bush's]

acceptance of this Offer, in an amount to be agreed upon by counsel or, alternatively, as

determined by the Court."  (*Id.* at 1.)

The parties were unable to agree about attorney's fees,[1] and on June 24, 2022, Bush filed

a Petition in Support of an Award of Counsel's Fees and Costs, asking for $4,795.00 in fees.

(Doc. No. 5 at 4.)  LVNV opposed the motion, arguing that the fees should be reduced by

---

[1] The parties agree that reasonable costs totaled $458.71.  (*See* Doc. No. 8 at 10 ("LVNV does not
contest Plaintiff's request for costs.").)

$1,495.  (Doc. No. 8 at 10.)  After reviewing LVNV's objections, Bush agreed to reduce the fee by 0.8 hours, or $330, for a total award of $4,465, but she argues that no further reduction is warranted.  (Doc. No. 9 at 1–2, 9.)

## I.   LEGAL STANDARD

In determining whether an attorney's fees are reasonable, courts use the "'lodestar' formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Middlebrooks v. Teva Pharma. US, Inc.*, Civil Action No. 17-412, 2019 WL 936645, at *4 (E.D. Pa. Feb. 26, 2019).  The party seeking fees bears the burden of showing that the claimed rates and number of hours are reasonable.  *See Hensley*, 461 U.S. at 433 ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."); *United Sates ex rel. Palmer v. C&D Tech., Inc.*, 897 F.3d 128, 139 (3d Cir. 2018) ("In a statutory fees case, the party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable by submitting evidence supporting the hours worked and rates claimed." (cleaned up)); *see also Clemens v. N.Y. Central Mut. Fire Ins. Co.*, 903 F.3d 396, 400 (3d Cir. 2018) ("Under the lodestar method, the party seeking attorney's fees has the burden to prove that its request is reasonable." (cleaned up)).  "The party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee."  *United States ex rel. Palmer*, 897 F.3d at 138 (cleaned up); *Middlebrooks*, 2019 WL 936645, at *4.

Courts have a "positive and affirmative function in the fee fixing process, not merely a passive one."  *Maldonado*, 256 F.3d at 184; *see also Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 362 (3d Cir. 2001) ("It is important that we reiterate our admonition in *Maldonado* that fee requests be subjected to a thorough and searching analysis . . . [I]t is necessary that the Court 'go

line, by line, by line' through the billing records supporting the fee request."). "In calculating the

hours reasonably expended, a court should review the time charged, decide whether the hours set

out were reasonably expended for each of the particular purposes described and then exclude

those that are excessive, redundant, or otherwise unnecessary." *Maldonado*, 256 F.3d at 184.

"Hours that would not generally be billed to one's own client are not properly billed to an

adversary." *Id.* (cleaned up). And, although a court may not *sua sponte* reduce a fee award, the

court "has a great deal of discretion to adjust the fee award" once the party opposing the award

lodges specific objections. *United States ex rel. Palmer*, 897 F.3d at 139.

## II.   ANALYSIS

As mentioned above, in calculating the lodestar, the Court must multiply the reasonable

hourly rate by the number of hours reasonably expended. *See Maldonado*, 256 F.3d at 184.

Here, Bush seeks fees for the time that her attorney, Stephen Dunne, Esq., and paralegal,

Kathryn Salvaterra, spent working on this case.

### A.   *Attorney's Fees*

Beginning with Dunne, LVNV does not appear to challenge the requested hourly rate of

$412.50. And in any event, the Court finds this rate reasonable given Dunne's 16 years'

experience in commercial litigation. (Doc. No. 5-1 at 1 (attesting that he has been practicing

since 2006).) According to the Community Legal Services ("CLS") fee schedule, an hourly rate

of $475 to $530 is customary for attorneys with similar experience in the Philadelphia area. (*See*

Doc. No. 5-4.) *See Maldonado*, 256 F.3d at 187–88 ("The fee schedule established by

Community Legal Services, Inc. ('CLS') has been approvingly cited by the Third Circuit as

being well developed and has been found by the Eastern District of Pennsylvania to be a fair

reflection of the prevailing market rates in Philadelphia. . . .   We approve of those rates as

reasonable in fixing the hourly rates in this case, and deny the hourly rates that are inconsistent

with them.").  Dunne's hourly rate of $412.50 falls below this range, and in the absence of any

evidence to the contrary, the Court does not find it unreasonable or excessive.

Instead of targeting his hourly rate, LVNV focuses on the tasks performed by Dunne and

argues that they are unreasonable and that the Court should exclude time spent performing

administrative tasks, drafting a "form complaint," and researching *Riccio v. Sentry Credit, Inc.*,

954 F.3d 582 (3d Cir. 2020).  (Doc. No. 8 at 6–8)  The Court addresses each issue in turn.

### 1.     <u>Administrative Tasks</u>

First, LVNV argues that line items for reviewing court notices of filed documents (0.1

hours), sending docketed materials to the client (0.3 hours), communicating with a process server

(0.5 hours), and reviewing emails from opposing counsel (1.1 hours), are not "attorney

function[s] normally billed to a paying client" and should be excluded from the fee award.[2]

(Doc. No. 8 at 7–8.)

---

[2] As mentioned above, Bush has agreed to reduce the fee request by 0.8 hours for "time spent on arguably clerical or administrative tasks." (Doc. No. 9 at 6.)  The first reduction relates to the letter of representation that Dunne sent to LVNV.  LVNV targets three line items, totaling 0.9 hours, related to drafting the letter and sending it to LVNV, arguing that Dunne improperly billed three times for drafting and sending the same letter of representation.  (Doc. No. 8 at 7.)  Bush responds that three different forms of notice—certified mail, first class mail, and facsimile—were necessary because "LVNV Funding, LLC all to [sic] often engages in a lack of notice argument making duplicative notice absolutely necessary to avoid future litigation expenses down the road where [LVNV] argues lack of notice."  (Doc. No. 9 at 6.)  Bush has, nevertheless, agreed to exclude two line items from the fee request, thus reducing the request by 0.5 hours.  (*Id.*)  The Court finds the remaining 0.4 hours spent drafting the letter of representation reasonable and will allow it to stand.

Second, LVNV targets the time Dunne spent "prepar[ing] civil cover sheet, case mgmt. form, [and] designation form," in connection with drafting the Complaint.  LVNV argues that the 2.4 hours spent drafting the Complaint is excessive because "preparation of [these] routine forms" is "clearly administrative."  (Doc. No. 8 at 8.)  Bush has agreed to reduce the fee request by 0.3 to account for the time spent preparing and filing these three forms.  (Doc. No. 9 at 6.)  The Court finds this to be a reasonable reduction, and contrary to LVNV's suggestion, we will not exclude the entire 2.4 hours spent drafting the Complaint simply because the billing entry referred to both substantive and administrative tasks.  *See, e.g.*, *Flory v. McCabe, Weisberg & Conway, LLC*, 18-15522 (AET), 2019 WL 2562632, at *4 (D.N.J. June 20, 2019) (explaining that "[b]lock billing is an acceptable practice and though it may often result in a number of vague entries, rather than excluding an entire entry, the court should examine the listed activities and the time spent conducting each activity to determine whether the hours reasonably

### a. Court Notices

The Court agrees that the April 4, 2022 entry for "[r]eviewing court notices of filed documents and attach[ing] to file" should be excluded from the fee award.  Bush argues that this entry is reasonable because "[f]ailing to review court notices could arguably violate an attorney's obligations under Rule 11."  (Doc. No. 9 at 7.)  Although the Court appreciates this argument, a review of the docket shows that the only document filed at that time was Bush's Complaint.  Thus, counsel's entry could refer only to the automatic email confirmation of his own filing.  This is not the type of court notice that triggers Rule 11 or warrants fee shifting.  *See Nitkin v. Main Line Health*, Civil Action No. 20-4825-KSM, 2022 WL 2651968, at *8 (E.D. Pa. July 8, 2022) (reducing fee request by 0.1 for time spent for "[r]eceipt of ECF notice of Complaint filed"); *L.J. ex rel. V.J. v. Audubon Bd. of Ed.*, Civil No. 06-5350 (JBS), 2009 WL 995458, at *14 (D.N.J. Apr. 13, 2009) ("Mr. Epstein filed a submission on the docket, received an automatic email confirmation of his own filing, and billed 0.1 hours of work at his desired rate of $400 per hour for having read the automatic form email. . . .  As one court recently observed in the face of an attorney's effort to bill for reviewing email confirmations of ECF filing receipts, '[n]ot only would these tasks normally consume a matter of seconds, but they would ordinarily be performed by secretarial or non-legal staff, not a $275 per hour attorney.'" (citation omitted)); *see also H.W. v. N.Y.C. Dep't of Ed.*, No. 20-CV-10591 (RA), 2022 WL 541347, at *4 (S.D.N.Y. Feb. 23, 2022) ("Further, several billing entries indicate that time was billed for the mere receipt and filing of electronic or paper documents and the review of ECF notifications.  Such activities, which are purely administrative in nature, are generally not compensable.").

---

correlate to all of the activities performed," and reducing fee request by 1.25 hours to account for the time spent on administrative tasks (quotation marks omitted)).

### b.      Forwarding Emails to Client

Likewise, the mere forwarding of docketed filings to the client is an administrative task that is not appropriate for fee shifting.[3]  *See Qureshi v. OPS 9, LLC*, Civil Action No. 14-1806 (MAH), 2020 WL 1910344, at *4 (D.N.J. Apr. 20, 2020) ("The scrutinized tasks often fall into the category of administrative or clerical, such as sending emails that merely forwarded a document."); *Roccisano v. Township of Franklin*, Civ. Action No. 11-6558 (FLW)(LHG), 2015 WL 3649149, at *9 (D.N.J. June 11, 2015) ("I find that tasks such as mailing letters, forwarding documents by email, checking a calendar, and receiving documents are purely clerical tasks which should not be billed to clients.").  Thus, the Court will also exclude 0.3 from the fee request.

### c.      Communications with Process Server

The Court will not, however, exclude the 0.5 hours that Dunne spent communicating with a process server.  LVNV has not cited any case that held communicating with the process server or preparing documents to be sent to them is an administrative function.  (*See* Doc. No. 8 at 7 (referencing case that held correspondence with *court reporter* was an administrative function).)  And unlike other cases where courts have excluded such fees, here, counsel spent only half an hour preparing documents for service and communicating with the process server to ensure they correctly served the Complaint and summons on Defendant.  *See Teamsters Pension Fund of Phila. & Vicinity v. R.E. Pierson Contracting Co.*, Civil No. 11–5051 (JBS/AMD), 2012 WL 5880303, at *2 (D.N.J. Nov. 20, 2012) (finding requested fees reasonable where the plaintiff's

---

[3] The Court can imagine a scenario where an attorney might be entitled to reimbursement for such tasks.  For example, if counsel summarizes the Court filings and their legal implications in the email forwarding those filings to the client, the task would go beyond the purely administrative.  However, none of counsel's filings suggest that is what happened here.  To the contrary, the notes on counsel's invoice show that he was merely emailing Bush a copy of her filed Complaint and the summons.  (Doc. No. 5-5 at 2.)

counsel spent 0.6 hours corresponding with the process server); *Ready Transp. Inc. v. CRST Malone, Inc.*, No. EDCV 07-0905-JTL, 2009 WL 1916405, at *2 (C.D. Cal. June 30, 2009) ("Plaintiff's counsel reasonably expended 3.5 hours in drafting a subpoena to be issued by the Southern District of Georgia, drafting correspondence to Nixon regarding his deposition, *contacting a Georgia process server to arrange service of the subpoena and drafting correspondence to the process server*, arranging for a court reporter in Savannah, Georgia and a location for the deposition, drafting correspondence to defendants' counsel at Murchison & Cumming, LLP, regarding the deposition, and conducting research on service of subpoena in Georgia." (emphasis added)). *Contra Nesse v. Hodges Cleaning Co.*, Case No. 18-cv-0099 (WMW/TNL), 2018 WL 6787654, at *5 (D. Minn. Dec. 26, 2018) ("But this period includes nine separate billing entries, for a total of 2.25 hours of attorney time equating to $421.25 in fees, that counsel primarily spent corresponding with process servers and the Court about service of process and scheduling.  There is no explanation as to why Plaintiffs' counsel expended such a significant amount of attorney time, at an attorney billing rate, performing what appear to be basic administrative responsibilities.  Because it is unreasonable for Plaintiffs to seek $421.25 in attorneys' fees for such administrative tasks, the Court deducts this portion of the requested attorneys' fees."); *Walker v. United Fin. Serv.*, No. 10–C–180, 2010 WL 4942008, at *2 (E.D. Wis. Nov. 30, 2010) (finding paralegal's time spent, among other things, "contacting the process server to ascertain the cost of service" and "preparing correspondence to the process server regarding the same" were "secretarial tasks").

### d.    Emails with Opposing Counsel

As for Dunne's emails with opposing counsel, the Court agrees with LVNV that sometimes correspondence with counsel may be classified as purely administrative and excluded from a fee award.  *See Nitkin*, 2022 WL 2651968, at *9 ("Courts routinely find that

communications relating to scheduling are administrative in nature and reduce fees accordingly."); *see also, e.g.*, *McGuire v. Neidig*, Civil Action No. 14-1531, 2017 WL 1319930, at *5 (W.D. Pa. Apr. 7, 2017) (reducing fees for time spent on "clerical or administrative tasks," which included telephone calls related to scheduling and rescheduling an "ENE" and email exchanges related to scheduling mediation); *Holzhauer v. Hayt, Hayt & Landau*, Civil Action No. 11-2336, 2012 WL 3286059, at *8–9 (D.N.J. Aug. 10, 2012) (reducing fees for administrative communications, including "faxed continuance letter to court & defendant's counsel" and an email "following up on discovery responses and rescheduling deposition in this matter"); *Hayward v. Del. Valley High Sch.*, Civil Action No. 10-5383, 2011 WL 1838784, at *3–4 (E.D. Pa. May 13, 2011) (concluding that spending "0.1 hours scheduling a conference call with defendant's counsel" was "administrative work" and reducing plaintiffs' counsel's request); *cf. In re Johnson & Johnson Deriv. Litig.*, 10-2033(FLW), 2013 WL 11228425, at *49 (D.N.J. June 13, 2013) (reducing time where an attorney "billed 0.2 hours on October 2, 2012, October 8, 2012, October 10, 2012, October 11, 2012 and October 16, 2012 for [the] paralegal to schedule conference calls" because it is a "non-compensable administrative task").

However, here, counsel's correspondence with opposing counsel related to the substantive issues in the case, including Bush's LVNV delinquent account and the offer of judgment that ultimately resolved the matter.  The Court cannot find that such correspondence was purely "administrative."  *See Bosh v. Cherokee Cnty. Gov. Build. Auth.*, Case No. CIV-11-376-JHP, 2016 WL 3924405, at *3 (E.D. Okla. May 25, 2016) (reducing hours for email correspondence among the plaintiff's three attorneys but declining to reduce 0.5 hours that one attorney spent emailing opposing counsel); *Access 4 All, Inc. v. 135 W. Sunrise Realty Corp.*, No. CV 06-5487(AKT), 2008 WL 4453221, at *11 (E.D.N.Y. Sept. 30, 2008) (declining to reduce

attorney's requested fees, including fees for correspondence with opposing counsel about discovery issues, because the court did "not find the time expended on such efforts to be unreasonable"); *Citizens State Bank v. Dixie County*, No. 1:10–cv–224–SPM–GRJ, 2011 WL 4595260, at *2 (N.D. Fla. Oct. 3, 2011) ("Ms. Bradford expended 8.6 hours of time preparing, editing and filing the motion to compel and preparing email correspondence to opposing counsel in an effort to obtain the outstanding discovery.  Accordingly, the Court finds that the 8.6 hours of time expended by Ms. Bradford were reasonable and represent legal services which were necessary to resolve successfully the issues caused by Plaintiff's failure to respond to Defendant's discovery requests.")  The 1.1 hours that Dunne spent communicating with opposing counsel were reasonable and the Court declines to exclude or reduce them from the fee award.

*     *     *

For those reasons, the Court reduces the fee request by 0.4 hours for time spent on administrative tasks.

2.   <strong><u>Drafting the Complaint</u></strong>

Next, LVNV takes issue with the 2.1 hours[4] that counsel spent drafting the Complaint, arguing that the time spent is excessive because with a few exceptions, "the complaint filed in this case is virtually identical to the complaints filed in in [sic] numerous other cases in this Court in the past year alone."  (Doc. No. 8 at 8.)  Bush argues that even if Dunne used a form complaint for efficiency reasons, he could not file that form without first "conduct[ing] a reasonable investigation into the law and facts supporting the underlying claims."  (Doc. No. 9 at

---

[4] As discussed above, counsel has voluntarily reduced the amount of fees requested for this task from 2.4 hours to 2.1 hours.

9

7.)  And a review of the Complaint shows that it does contain facts and exhibits specific to Bush's situation and claims.  (*See* Doc. No. 1 at ¶¶ 10, 13, 14, 26, 28–31, 34–37, 43, 44.)

The Court finds that 2.1 hours is a reasonable amount of time to review and revise a form complaint to describe the facts and exhibits specific to this case.  *See I.W. v. Sch. Dist. of Phila.*, Civil Action No.: 14-3141, 2016 WL 147148, at *13 (E.D. Pa. Jan. 13, 2016) (finding counsel was entitled to recover fees for 2.3 hours spent drafting and revising a form administrative complaint); *Pretlow v. Cumberland Cnty. Bd. of Soc. Servs.*, No. Civ.04–2885 (FLW), 2005 WL 3500028, at *5 (D.N.J. Dec. 20, 2005) (holding that counsel was "entitled to recover 5 hours for his work on the Complaint" even though "much of the language in the Complaint in this matter [wa]s taken, verbatim, from a complaint filed by" the same counsel in a different action); *see also Am. Oversight v. U.S. Dep't of Justice*, 375 F. Supp. 3d 50, 70 (D.D.C. 2019) ("[F]ees of slightly over $5,000—at billing rates of between $440 and $717 per hour—for preparing, filing and serving" a "routine FOIA complaint . . . appear to be reasonable.").

### 3.   **Research**

Finally, LVNV contests the 0.5 hours that Dunne spent "[s]earch[ing] citations of *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020) ('Collectors are prohibited from reporting disputed debts to credit agencies without noting the fact of a dispute.')."  (Doc. No. 8 at 9.) LVNV argues that given Dunne's 16 years' experience and expertise in FDCPA matters—both of which are reflected in his hourly rate—Bush cannot "seek compensation for research that an attorney" with the same degree of familiarity with the FDCPA "would not have had to do."  (*Id.* at 10.)  According to the LVNV, *Riccio* is not a "new" case, nor did it alter the established requirement under the FDCPA that "a debt collector notify a credit reporting agency of a disputed debt," and therefore, Dunne's research into the continued viability of that principle was unnecessary.  (*Id.* at 9 (arguing that *Riccio*'s holding did not "impact, to any degree, a debt

collector's obligation to notify the credit bureaus to whom it reports that a disputed debt is disputed").)  In response, Bush again references Rule 11 and emphasizes the "imperative that practicing attorneys keep abreast to the ever changing legal landscape in order to comply with the mandates of Rule 11—'the signor conduct a reasonable investigation into the law and facts supporting the underlying claims.'"  (Doc. No. 9 at 8.)

The Court agrees that Dunne was required to conduct a reasonable investigation into the continued viability of the law on which Bush's FDCPA claim was grounded.  *Cf. Painsolvers, Inc. v. State Farm Mut. Auto Ins. Co.*, 2012 WL 4358846, at *3 (D. Haw. Sept. 24, 2012) ("Moreover the Court observes that the practices cited by Plaintiff . . . , such as [s]hepardizing cases and reviewing statutory annotations, are tasks that should be implemented by any competent attorney . . . .").  Nevertheless, that does not mean that such work is entitled to reimbursement at the rate of an experienced attorney like Dunne.  *See George v. Brennan*, Civ. A. No. 85–5145, 1987 WL 6413, at *2 (E.D. Pa. Feb. 10, 1987) (reducing fees from $770 to $400 for time spent drafting a response brief because "the level of the work, shepardizing the *Yoder* case and making certain that the Delaware statute was in its current form, does not require particularly sophisticated legal skills"); *see also Wentworth Grp. Inc. v. Evanston Ins. Co.*, 20-CV-6711 (GBD) (JLC), 2022 WL 336456, at *9 (S.D.N.Y. Feb. 4, 2022) (reducing fee award by 20% where the attorney "often billed time for work that could have been performed by a more junior attorney, such as cite checking, shepardizing cases . . ."); *Cooper v. Dieugenia*, 14-CV-6136 (PKC), 2018 WL 2103200, at *4 (E.D.N.Y. May 7, 2018) (reducing fee award where counsel "billed a number of hours to legal research and other numerous entries for tasks more appropriately handled by younger associates, such as . . . shepardizing cases"); *cf. Institute for Wildlife Protection v. Norton*, No. C03-1251P, 2006 WL 1896730, at *2 (W.D. Wash. July 10,

2006) ("[P]inpoint cite checking and Shepardizing can be done by a paralegal, and the cases make clear that, whether or not these tasks actually *are* performed by a paralegal, they should not be paid for at any greater than a paralegal rate.").

Accordingly, the Court will allow reimbursement of the 0.5 hours that Dunne spent researching and shepardizing *Riccio*, but only at an hourly rate of $210.  This rate falls within the range of reasonable rates for an attorney with less than two years' experience working in the Philadelphia area.  (*See* Doc. No. 5-4.)

\*　　\*　　\*

In sum, the Court reduces Dunne's hours by 0.4 for time spent on administrative tasks and finds that the 0.5 hours spent shepardizing *Riccio* will be reimbursed at the rate of a junior associate.  When these adjustments are taken into consideration, Dunne's lodestar calculation is: (9.5\*$412.50) + (0.5\*210) = $4,023.75.  The Court finds this amount reasonable in light of the facts of this case.  *See Flory*, 2019 WL 2562632, at \*4 (finding that "10.75 hours represents a reasonable amount of time for counsel to have spent" in an FDCPA case where the plaintiff accepted an offer of judgment after the complaint was served but before any answer or other response was filed); *Howard v. Midland Credit Mgmt., Inc.*, Civil Action No. 11–cv–03123–PAB–BNB, 2012 WL 4359361, at \*4 (D. Col. Sept. 24, 2012) ("Defendant filed an Offer of Judgment 11 days after plaintiff filed the complaint and plaintiff accepted the Offer of Judgment within 28 days of filing the complaint.  Prior to the entry of judgment, plaintiff's attorney was not required to perform substantial legal work outside of drafting the complaint, serving defendant, and drafting the Rule 68 Offer of Judgment.  Accordingly, the Court concludes that the reasonable number of hours spent by plaintiff's attorney in this case is 10.1 hours.").

### B.    Paralegal Fees

Bush also requests $175 in fees for the time that paralegal Kathryn Salvaterra spent working on this case.  LVNV opposes this request, arguing that Bush failed to substantiate the reasonableness of Salvaterra's $125 hourly rate.  (Doc. No. 8 at 4.)  In response, Bush provided a copy of Salvaterra's resume, which shows she has 11 years' experience working as a paralegal, and for the last 8 years has held a bachelor's degree in paralegal studies from an ABA approved college.  (*See* Doc. No. 9-1.)  The CLS fee schedule shows that a reasonable rate for a paralegal working in the Philadelphia area is between $160 and $230.  (Doc. No. 5-4.)  Salavaterra's hourly rate, which falls below that range, is not unreasonable or excessive.

LVNV also challenges one entry for 0.5 hours that Salvaterra spent opening a new case file and saving documents to it.  (Doc. No. 8 at 5.)  LVNV argues that this task "is clearly administrative in nature, and should be excluded from a fee award."  (*Id*.)  The Court agrees that these tasks are administrative, and thus, not properly recovered in this fee award.  *See Freid v. Nat'l Action Fin. Servs., Inc.*, Civil Action No. 10–2870 (ES)(CLW), 2011 WL 6934845, at *8 (D.N.J. Dec. 29, 2011) ("Tasks that have been deemed administrative include opening a file in a database, mailing letters, and copying documents to a CD." (quotation marks omitted)); *Levy v. Global Credit & Collection Corp.*, Civil No. 10-4229 (RBK/KMW), 2011 WL 5117855, at *6 (D.N.J. Oct. 27, 2011) (excluding time billed by paralegals for "[o]pen[ing] file in database" and saving documents); *see also Buchannon v. Assoc. Credit Servs., Inc.*, Case No.: 3:20-cv-02245-BEN-LL, 2021 WL 5360971, at *22 (S.D. Cal. Nov. 17, 2021) ("Receiving documents from CM-ECF or saving them to a case file is an administrative type task that is not appropriate for Mr. Alpert, a paralegal, to bill for at his hourly rate.").

Accordingly, Salvaterra's hours are reduced to 0.9 and her lodestar calculation is: (0.9*$125) = $112.50.  This request is reasonable.

## III.   CONCLUSION

Bush's petition is granted in part and denied in part.  Bush is entitled to recover $4,136.25 in attorney's fees and $458.71 in costs.  An appropriate order follows.